THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* WAL-DEMIRO ARROYO NÚÑEZ, Defendant and Appellant.

No. CR-70-105.      Decided April 27, 1971.

818

*E. L. Belén Trujillo* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

PER CURIAM: Appellant Waldemiro Arroyo Núñez was accused and convicted of the offense of grand larceny and ordered to serve a penalty of from one to three years in the penitentiary. The verdict of the jury was rendered by unanimity. He assigns that the trial court erred: (1) in finding him guilty under the charge that the offense committed was grand larceny; (2) in giving credit to the incredible testimony of the only witness, Belén Bonilla Santiago; (3) in denying the motion for new trial; (4) that Mrs. Bonilla being appellant's accomplice, her testimony was not corroborated; and (5) that the prosecuting attorney commented on appellant's silence. These assignments lack merit.

The facts of the case are the following:

The only witness, Mrs. Bonilla, testified that she lives in Parcelas Aguilita in Juana Díaz and that Bernardo Báez Flores is her foster son; that the latter worked in Central Mercedita in Ponce and there he suffered a labor accident about three years before and that he became dumb and disabled; that because of that accident they retained the services of an attorney to take steps for the claim of compensation in the State Insurance Fund; that defendant is a labor leader and on three occasions he took Bernardo, herself, and her daughter Carmen Báez in his automobile to the State Insurance Fund in San Juan, for medical hearings; that from a check of $800 that Bernardo received one month before Christmas in 1967 for per diems as a result of the accident she paid defendant $60 for taking them to San Juan three times; and that she sent her daughter Carmen Báez to deposit $600 in the bank in the name of Bernardo Báez Flores. This witness continued testifying that around February 20, 1968, defendant took her, Carmen, and Bernardo in his automobile to the State Insurance Fund in San Juan; that defendant told them to wait outside while he entered the offices of the Fund; that a short time later defendant returned with a check of $1,000 for Bernardo and she told him that the check would be cashed in Ponce; that then defendant told her that he was going to cash the check in San Juan because he had to take $500 for him because he had "investigated" the case; that when the witness told him "we are going to cash this check in Ponce" she did "this to take it . . . this to put it into her handbag and he did this" and he told her that the check had to be cashed in San Juan; that she did not remember whether appellant snatched it from her, but that she knew that "she was holding part of the check . . ."; that she was opposed to that, but defendant drove away in his automobile with Carmen and Bernardo leaving her on the sidewalk in front of the Fund; that about half an hour later defendant returned with

the check already cashed and delivered $500 to her in an envelope. She said, also, that they returned to Juana Díaz with defendant and on the way she told him why had he done that, cashing said check, because he could not take that money and he told her "fuck you, and I cashed the $500"; that defendant did not take any other action other than bringing her to San Juan and then back to Mercedita in Ponce, and that she had not contracted him to take any step whatsoever; that the $500 that defendant delivered to her, she had deposited in the bank in the name of Bernardo.

During cross-examination the witness ratified that defendant snatched the check from her hands when she was going to take it and put it in her handbag and that he told her that it had to be cashed in San Juan; that defendant cashed the check and appropriated $500 for himself and that she had not authorized him to do so; that she complained to the district attorney in or about July 1968; that the aforementioned daughter eloped with appellant the preceding month. The reason she gave for complaining was that she found the savings bank book with which she had ordered her daughter to deposit the first $600 and the other $500 belonging to her son, and she went to notify that her daughter and appellant had withdrawn all the money from the bank. Confronted with her previous statements (to the effect that when appellant returned from the Fund with the $1,000 check he delivered it to her and she put it into her handbag; that then Waldemiro told her that the check must be cashed because $500 belonged to him because "I investigated Bernardo's case"; that when he insisted that the check had to be cashed she delivered it to him and he went with Edith to cash it while the witness remained in the sidewalk with Bernardo) she said that she did not remember that, but she admitted that she remembered better the events in July 1967 than on the day of the trial. Likewise other conflicts of little importance in the details of the facts of the case were shown between her

testimony and her previous statement. The prosecuting attorney brought Báez to the witness stand but he did not answer the questions asked him and only made gestures with his head.

The $1,000 check appears endorsed by Bernardo Báez with his mark, fingerprints, and appellant's signature and that of Edith Báez as witness of the mark, so that Mrs. Bonilla's testimony at the trial in the sense that Bernardo accompanied appellant to cash the $1,000 check is more credible than her statement to the effect that Bernardo stayed with her.

Appellant argues that from the testimony of Mrs. Bonilla there appears that appellant appropriated the money by means of trickery or fraud; that the owner of the check, Bernardo Báez, did not oppose to the cashing of the check; that Báez had not been pronounced disabled and that Mrs. Bonilla had not been conferred his tutorship; that there was no evidence that the said owner was opposed to the delivery of $500 to appellant; that for that reason there was no stealing of said money, but possibly larceny by trickery or fraud in obtaining the money by false pretenses or embezzlement or robbery; that Mrs. Bonilla's testimony is incredible, since she incurred contradictions when considered in the light of her previous statement and her testimony in the subsequent case of embezzlement followed against her daughter; that a new trial should have been granted for the reasons aforestated and because new evidence was discovered; that since the stenographer did not take in shorthand the notes in connection to the arguments of the parties, appellant is precluded from assigning that the trial court permitted the prosecuting attorney to comment on defendant's silence.

The offense of larceny is defined in § 426 of the Penal Code (33 L.P.R.A. § 1681) as the act of stealing with criminal intent, personal property belonging to another person; and § 428 of said Code (33 L.P.R.A. § 1683), provides that grand larceny is the one committed when the property taken has a

value of one hundred dollars or more, or when the property is taken from the person of another.

1.—The evidence shows that appellant withheld the check against the will of Mrs. Bonilla, who took care of her foster son Bernardo Báez, owner of the check, who had been disabled and had lost his speech as a result of a labor accident. The fact that Báez endorsed it is not indicative that he consented that appellant, after cashing the check into currency, could appropriate $500 from said money in cash to his own use. The evidence does not show that Báez opposed said appropriation, but Mrs. Bonilla, who all the time acted on his behalf, did actively oppose said appropriation. It cannot be said that said lack of opposition on the part of the owner constituted consent on his part to the effect that appellant retain for himself half of the amount in cash of the check in question. It cannot even be said that there was a passive consent on his part in view of his condition of disability. Appellant came into the possession of the amount of the check and retained half of the same against Mrs. Bonilla's active opposition. The act of Báez in endorsing it, which act permitted appellant to cash it, did not constitute a conscious, voluntary consent on the part of Báez for appellant to legally obtain the possession of said amount and then appropriate $500 therefrom.

We said in *People* v. *Irlanda Rivera*, 92 P.R.R. 734 (1965), that:

". . . this crime [larceny] is committed at the very moment of the taking of the property, hence the taking may endure only for an instant; . . . that it is not necessary that the person from whom the property is stolen should have the general ownership, or even that he should have the right of possession, nor that the thief should know who the owner is; the possession of the thing stolen is the essential element of the crime. . . . Taking the property notwithstanding the passive submission of the owner is also larceny, as long as, (1) there is no indication that he wishes it taken; (2) and no knowledge by taker that the owner

wishes it taken; (3) that there is no natural understanding between the two on the appropriation; and (4) no active measures of inducement are employed for the purpose of leading into temptation."

We agree with the Solicitor General in that "This is not a case of larceny by trick, since defendant did not obtain the possession of the money by means of fraud or trick but, on the contrary, he appropriated for himself the $500 openly and against the express opposition of Belén Bonilla Santiago.

"The offense of embezzlement is not involved in this case either. Defendant never had the legal possession of the $500. On the contrary, appellant acquired the possession of said money illegally, without the consent of the owner, said illegal appropriation constituting an offense of grand larceny."

We said in *People* v. *Landráu*, 78 P.R.R. 264 (1955), that *". . . When the accused has only the custody of the property and by means of that custody illegally acquires its possession, the felonious appropriation of the same constitutes the crime of larceny."* (Italics ours.)

The Solicitor General correctly states that this is not a robbery offense either. The evidence showed that defendant stole the amount of $500 belonging to another person. It does not appear from the evidence that said taking was done by means of violence or intimidation. The fact that defendant took the check from Mrs. Bonilla's hands to cash it in the bank does not constitute the violence or intimidation required by § 238 of the Penal Code.[1] Furthermore, the offense of larceny in this case was not committed at the time the defendant took the check to cash it at the bank, but rather it was committed at the time he appropriated the $500 after the check had been cashed, inasmuch as the offense of larceny is

---

[1] Violence implies the use of force or aggression and intimidation implies a conduct which causes fear of corporal damage in the victim. *People* v. *Gómez*, 71 P.R.R. 764 (1950); *People* v. *Marengo*, 66 P.R.R. 777 (1947); § 239 of the Penal Code (33 L.P.R.A. § 852).

committed at the very moment of the taking. *People* v. *Rosario*, 80 P.R.R. 604 (1958). See 2 Wharton, Criminal Law and Procedure 107–108, § 466.

The Solicitor General correctly adds that:

"The elements of the offense of obtaining money under false pretenses penalized by § 470 of the Penal Code (33 L.P.R.A. § 1815) are not present in the case at bar either. In order to constitute said offense the following must appear from the allegations and from the evidence: (1) the intent to defraud, (2) the actual fraud, (3) false pretenses used for perpetrating the fraud, and (4) that the fraud has been accomplished by means of the false pretenses as a cause which induced the owner to part with the property. *People* v. *Flores,* 33 P.R.R. 764 (1924); *People* v. *Olmeda,* 66 P.R.R. 170 (1946).

"In the present case defendant did not resort to false pretenses to appropriate to himself the $500. It does not appear either that the owner of the property parted therewith induced by defendant's false pretenses. On the contrary defendant manifestly appropriated for himself the money against Belén Bonilla's express will, and without the consent of Bernardo Báez Flores, disabled person in whose name the check was issued.

■ ". . . there was no basis in the allegations [nor grounds at law] . . . to justify instructions to the jury on the offenses of larceny by trick, embezzlement, robbery, nor on the offense of obtaining money under false pretenses. Consequently, the trial court did not commit error in failing to transmit to the jury instructions on said offenses, since the evidence only admitted a verdict of acquittal or conviction of larceny." *People* v. *Cortés Muñiz,* 93 P.R.R. 761 (1966).

■ 2.—Notwithstanding the contradictions as to some details of the facts, between Mrs. Bonilla's testimony and her previous statement in relation to the facts of the case, nothing incredible or improbable appears from her testimony which, having deserved the credit of the jury, is sufficient to support appellant's conviction.

■■ Appellant refers to a testimony offered by Mrs. Bonilla in a case of embezzlement followed against Carmen

Báez in the Superior Court, Ponce Part, on August 5, 1969. Said testimony was offered by Mrs. Bonilla in a trial held subsequent to the prosecution of the case at bar. Appellant seeks to impeach now, for the first time on appeal, said witness' testimony with a subsequent statement offered by her. Evidently it is not proper, since the impeachment of the credibility of the witness on the basis of incompatible statements should be made at the trial court by evidence concerning inconsistent statements prior to the act of the trial. See 32 L.P.R.A. § 2151; *People* v. *Pacheco*, 83 P.R.R. 505 (1961); *People* v. *Martell Cajigas*, 88 P.R.R. 617 (1963); *People* v. *Vélez Robles*, judgment of December 16, 1970.

■ 3.—The trial court did not err in denying the motion for new trial. The alleged new evidence consisted of an alleged certification of the State Insurance Fund crediting that the check of $1,000 was sent to Báez at Ponce and an alleged written contract by which Mrs. Bonilla had contracted appellant's services for $500. Obviously, this evidence could have been obtained and presented at the trial by appellant by the exercise of reasonable diligence. *People* v. *Vázquez Izquierdo*, 96 P.R.R. 149, 152 (1968). The other grounds of the said motion are the assignments previously discussed.

■ 4.—It is assigned that Mrs. Bonilla being an accomplice, her testimony was not corroborated. There is no evidence whatsoever in the record showing that this witness participated as abettor in appellant's acts which gave rise to this cause.

■ 5.—Finally, appellant complains that the prosecuting attorney commented on the right of the accused to remain silent during his argument to the jury, and that he made other comments injurious to his right to a fair and impartial trial. Appellant explains that he is precluded from discussing this averment because the stenographer reporter did not take stenographic notes of the arguments to the jury despite the

fact that he did not waive his right to have said notes taken.

In *People* v. *Vélez*, 77 P.R.R. 775, 777–78 (1955), we said:

"It is of general knowledge that in criminal cases tried before our Superior Courts, the stenographer reporters never take in shorthand the closing arguments which are given—after the oral testimony is finished and before the judge transmits his instructions to the jury—by the prosecuting attorney as well as by the defense. . . . Of this practice we may take judicial notice. In case defendant wishes that these arguments be taken in shorthand, he should clearly request this of the court. Otherwise his silence in that respect may be interpreted as a waiver of that right."

In the instant case there does not appear from the record that the defense requested the court to order the stenographer reporter to take in shorthand the arguments of the prosecuting attorney and of the counsel for the defense. Therefore, defendant waived his right to have said arguments taken in shorthand. *Cf. People* v. *Fournier*, 80 P.R.R. 376, 401–402 (1958); *People* v. *Matos Pretto*, 93 P.R.R. 111, 120–121 (1966).

In view of the foregoing the judgment rendered in this case by the Superior Court, San Juan Part, on April 28, 1969, will be affirmed.

Mr. Acting Chief Justice Pérez Pimentel did not participate herein.